IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MATTHEW COTTEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-330-Y |
| | § | (Consolidated with Nos. |
| LORIE DAVIS, Director,[1] | § | 4:15-CV-698-Y, 4:15-CV-723-Y, |
| Texas Department of Criminal | § | 4:15-724-Y & 4:15-CV-725-Y) |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Matthew Cotten, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

In February 2011, in five separate indictments, Petitioner was charged in the 372nd Judicial District Court, Tarrant County, Texas, with two counts of forgery, one count of possession of less than one gram of methamphetamine, one count of fraud, and one count

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

of unlawful possession of a firearm by a felon.[2] Each indictment also included the same habitual-offender notice alleging two sequential felony convictions. On July 31, 2012, a hearing was held on Petitioner's motion to suppress, in which he challenged the admissibility of two recorded statements he made to law enforcement. After hearing testimony, the trial court denied the motion, and Petitioner entered open pleas of guilty to all five offenses, reserving his right to appeal the denial of the motion to suppress. A presentence investigation report was ordered, and Petitioner's sentencing was later scheduled for November 30, 2012, at which the trial court assessed his punishment at twenty years' confinement on the drug charge and thirty years' confinement on the remaining four charges, the sentences to run concurrently. Petitioner appealed the trial court's order denying his motion to suppress, but the Eighth District Court of Appeals of Texas affirmed the trial court's order and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Op., ECF No. 10-7.) Petitioner also sought state postconviction habeas relief challenging the denial of his motion to suppress by filing five state habeas applications, one for each conviction, which were ultimately denied by the Texas Court of Criminal Appeals

---

[2]Trial Court Case Nos. 1222336D, 1227111D, 1227021D, 1227020D, and 1227019D (State Habeas R., WR-82,830-01, 56, ECF No. 10-13; State Habeas R., WR-82,830-02, 56, ECF No. 10-16; State Habeas R., WR-82,830-03, 56, ECF No. 10-19; State Habeas R., WR-82,830-04, 56, ECF No. 10-22; State Habeas R., WR-82,830-05, 56, ECF No. 10-25.)

without written order on the findings of the trial court. ("Action Taken," ECF Nos. 10-11, 10-14, 10-17, 10-20 & 10-23.) This federal habeas petition challenging the denial of his suppression motion followed.

## II. ISSUES

In five grounds, Petitioner claims (1) his sentences are illegal because the trial court found only one enhancement paragraph true; (2) and (3) his sentences are void because the state presented "no evidence" at trial to support a finding of true to the enhancement paragraph as required by § 12.42(d) of the Texas Penal Code; (4) his *Miranda* rights were violated by Detective Anderson's failure to read the full "Miranda Warning" as required by article 38.22, § 3(a)(2) of the Texas Code of Criminal Procedure; and (5) his waiver of the *Miranda* rights was involuntary because it was "the product of coercive and intimidating tactics used by Detective Anderson." (Pet. 6-7 & 10A, ECF No. 1.)

## III. RULE 5 STATEMENT

Respondent admits that the petition is not barred by successiveness or the statute of limitations and that Petitioner has exhausted the claims in the state courts. (Resp't's Answer 3-4, ECF No. 8.)

## IV. DISCUSSION

3

## Legal Standard for Granting Habeas Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or a decision that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); *see* 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written

4

opinion, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and infer fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

### (1) Void Judgments

Under his first ground, Petitioner asserts that his sentences are all void as excessive because the record and the trial court's judgments show that the trial court found only "one enhancement paragraph" true. (Pet. 6, ECF No. 1.) The state trial court rejected this claim and found that Petitioner's sentences were not excessive, and the Texas Court of Criminal Appeals denied habeas relief based on the trial court's findings.[4]

Petitioner fails to demonstrate that the state courts' adjudication of the claim is contrary to or an unreasonable

---

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

[4](State Habeas R., WR-82,830-01, 52, ECF No. 10-13; State Habeas R., WR-82,830-02, 52, ECF No. 10-16; State Habeas R., WR-82,830-03, 54, ECF No. 10-19; State Habeas R., WR-82,830-04, 52, ECF No. 10-22; State Habeas R., WR-82,830-05, 54, ECF No. 10-25.)

application of federal law or based on an unreasonable
determination of the facts in light of the evidence. There was only
one enhancement paragraph in each indictment to which Petitioner
judicially confessed to be true and that the trial court found to
be true. Four of the trial court's judgments reflect that
Petitioner pleaded true to, and the trial court found to be true,
the "2nd Enhancement/Habitual Paragraph," instead of the "1st
Enhancement Paragraph." This defect appears to be purely clerical
or typographical error, and Petitioner cites to no federal law
holding that such error renders a judgment void. Further, under
state law, it is well established that a clerical or typographical
error in the entry of a judgment is subject to correction by a
judgment nunc pro tunc. *Alvarez v. State,* 605 S.W.2d 615, 617 (Tex.
Crim. App. 1980).

### (2) and (3) No Evidence

Under his second and third grounds, Petitioner claims his
sentences are void because the state presented no evidence at trial
to support the enhancement paragraph as required by article
12.42(d) of the Texas Penal Code and due process. (Pet. 6, ECF No.
1.)

Whether a state prisoner's sentences were properly enhanced is
generally a matter of state law and questioning that propriety fails
to present a meritorious basis for federal habeas relief. *Rubio v.
Estelle,* 689 F.2d 533, 536 (5th Cir. 1982); *Donald v. Jones,* 445

6

F.2d 601, 606 (5th Cir. 1971). Under state law, it is the state's burden to show that each previous felony conviction alleged is final, that the second felony conviction is for an offense that occurred subsequent to the previous felony conviction's having become final, and that the defendant was the person previously convicted of the offenses. If, however, a defendant pleads "true" to the enhancement paragraph, the state's burden of proof is satisfied. *Harvey v. State,* 611 S.W.2d 108, 112 (Tex. Crim. App. 1981); *Dinn v. State,* 570 S.W.2d 910, 915 (Tex. Crim. App. 1978). Consequently, once Petitioner judicially confessed that "[a]ll enhancement and habitual allegations set forth in the indictment are true and correct," the State was relieved of its burden to prove the allegations.

### (4) and (5) *Miranda* Warnings

Under his fourth and fifth grounds, Petitioner claims that his *Miranda* rights were violated during the custodial interrogation because Detective Anderson failed to read the "full" *Miranda* warning as required by article 38.22 of the Texas Code of Criminal Procedure and that his waiver of his rights was involuntary because it was the product of coercive and intimidating tactics used by the detective.[5]

---

[5]Respondent argues that Petitioner's claims are barred by his knowing and voluntary plea. It is well settled that a knowing, voluntary plea of guilty waives all nonjurisdictional defects occurring before the plea. *Mabry v. Johnson,* 467 U.S. 504, 508 (1984); *United States v. Smallwood,* 920 F.2d 1231, 1240 (5th Cir.), *cert. denied,* 501 U.S. 1238 (1991); *United States v. Diaz,* 733 F.2d 371, 376 (5th Cir. 1984); *United States v. Brice,* 565 F.2d 336, 337 (5th Cir. 1977). And indeed, this rule extends to alleged constitutional violations. *United States*

(Pet. 7 & Attach., ECF No. 1.) Petitioner raised these claims on direct appeal,[6] and, in overruling the claims, the court of appeals addressed them as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

Cotten was indicted in . . . [Case No. 1222336D for forgery] in late 2010. While this case was pending, law enforcement officers with the Fort Worth Police Department and the United States Secret Service executed a search warrant at Cotten's residence in January 2011. Cotten was asleep when officers burst into his bedroom. After Cotten was placed in handcuffs, Detective Matthew Anderson of the Fort Worth Police Department approached him.

Detective Anderson informed Cotten that he was under arrest for the unlawful possession of a firearm discovered on his nightstand during the execution of the warrant. Anderson then read aloud to Cotten from a "MIRANDA WARNING" card printed by the Fort Worth Police Department. Immediately thereafter, Anderson stated, "[w]e're just here talking and want to find out where the stuff is so we don't have to tear even more stuff up" and asked Cotten if he "mind[ed] talking to [them] and pointing [them] in directions?" Cotten replied "[n]o problem at all" and signed the warning card. During the interview with Detective Anderson—who was joined by Secret Service Agents Holloway and Maguire in asking questions—Cotten admitted his involvement in several crimes. Cotten was subsequently transported to the police station for further questioning.

At the police station, Cotten was placed in an interview room. Approximately six minutes later and before any questioning had commenced, the following exchange occurred between Detective Anderson—who was

---

*v. Broce,* 488 U.S. 563 (1989); *Tollett v. Henderson,* 411 U.S. 258 (1973). However, because Petitioner was permitted by the state court to appeal the merits of his *Miranda* claims on direct appeal, that bar does not prevent this Court from reviewing the merits of the claims. *Lefkowitz v. Newsome,* 420 U.S. 283, 293 (1975).

[6]Petitioner appealed all five of the trial court's judgments in separate companion cases raising the same issues.

joined by Agent Holloway in the room—and Cotten:

> [DETECTIVE ANDERSON]: Real quick right before I start with you, this is, again, your *Miranda* warning we read to you, correct?
>
> [COTTEN]: Yes, sir.
>
> [DETECTIVE ANDERSON]: To talk to us again, just to keep talking so we can talk to you about some other stuff, I just need you to write the new time there, um 11:50 am, and if you still wish to talk to us, just kinda put an initial right there and then just put the date on top of it, just, 1/12/11 cause this is just continuing the same conversation we started today.
>
> [COTTEN]: Okay.

Cotten initialed the form. During the interview, Cotten further incriminated himself.

Cotten moved to suppress his two statements. The trial court heard the motion and, after listening to testimony and considering the parties' arguments, denied the motion. Later that day, Cotton entered an open plea of guilty and judicially confessed, but retained his right to appeal the trial court's ruling on his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial judge's ruling on a motion to suppress a suspect's oral statement, we apply a bifurcated standard of review. *Gonzales v. State,* 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial judge's determination of historical facts when supported by the record and to rulings on mixed questions of law and fact if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Gonzales,* 369 S.W.3d at 854; *Guzman,* 955 S.W.2d at 89. But when the resolution of a mixed question of law and fact do not depend on evaluation of credibility and demeanor, we apply a *de novo* standard of review to the trial court's ruling. *Gonzales,* 369 S.W.3d at 854; *Guzman,* 955 S.W.2d

at 89.

## FIRST STATEMENT

In his first and second issues, Cotten contends that the trial court erred in failing to suppress his first statement because its procurement violated his constitutional rights under *Miranda v. Arizona* and statutory rights under Article 38.22 of the Texas Code of Criminal Procedure.

### *Adequacy of Miranda Warnings*

Cotten first challenges the adequacy of the *Miranda* warnings administered to him. Cotten does not argue that Detective Anderson did not provide him with all the warnings required by *Miranda* and Article 38.22. Instead, he asserts that Detective Anderson's failure to read aloud to him the following "waiver" provision from the "MIRANDA WARNING" card rendered his statement inadmissible under "both Miranda and Art. 38.22[:]"

> I HAVE READ AND UNDERSTAND MY LEGAL RIGHTS AS STATED ABOVE ON THIS DOCUMENT. I FREELY, VOLUNTARILY AND KNOWINGLY WAIVE THESE LEGAL RIGHTS, AND AGREE TO BE INTERVIEWED BY POLICE.

We disagree.

As acknowledged by Cotten, neither *Miranda* nor Article 32.22 requires that before a suspect is questioned, he be given a "waiver" warning like the one identified above. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a)(1)-(5) (West Supp. 2013); *Miranda,* 384 U.S. at 479, 86 S. Ct. at 1630. Nevertheless, Cotten asserts that Detective Anderson should have read the "waiver" provision aloud to him to guarantee that he knowingly, intelligently, and voluntarily waived his constitutional and statutory rights. Cotten, however, cites no authority—and we have found none—supporting his assertion. Indeed, Cotten's assertion runs contrary to the general rules that neither a written nor an oral express waiver is required and that waiver can be inferred and need not be express. *Joseph v. State,* 309 S.W.3d 20, 24 and n.5 (Tex. Crim. App. 2010). In addition, by signing the warning card, Cotten acknowledged having received the requisite warnings from Detective Anderson. Accordingly, Cotten has failed to

10

demonstrate that the trial court erred in denying his
motion to suppress on the basis that the "waiver"
provision was not read aloud to him.

. . .

### *Waiver of Miranda Rights*

Cotten next argues that his apparent waiver of his
constitutional and statutory rights was, in reality,
neither voluntary nor knowing and intelligent. He
complains that he was intimidated into making his
inculpatory statements, coerced into waiving his rights,
and incapacitated when the warnings were read to him. We
disagree.

### A. Applicable Law

The State bears the burden of showing by a
preponderance of the evidence that a suspect voluntarily,
knowingly, and intelligently waived his rights under
*Miranda* and Article 38.22. *Joseph,* 309 S.W.3d at 24.
"[T]he relinquishment of the right must have been
voluntary in the sense that it was the product of a free
and deliberate choice rather than intimidation, coercion,
or deception." *Id*. at 25. Additionally, "the waiver must
have been made with full awareness of both the nature of
the right being abandoned and the consequences of the
decision to abandon it." *Id*. In making a determination as
to waiver, "the totality of the circumstances surrounding
the interrogation" must be considered. *Id.* (internal
quotation marks omitted).

### B. Discussion

The totality of the circumstances surrounding
Cotten's interrogation establishes that his waiver was
voluntary. That is, Cotten's waiver resulted from a free
and deliberate choice without intimidation, coercion, or
deception. Detective Anderson orally advised Cotten of
his rights. Those warnings informed Cotten that he had
the right to remain silent, that he did not have to make
any statement to anyone, and that he had the right to
terminate the interview at any time. Immediately after
receiving these warnings, Cotten willingly participated
in the remainder of the thirteen-minute interview. At no
time during the interview did Cotten ask that it be

11

stopped. In fact, Cotten answered all of the questions asked of him. That Cotten did so calmly and matter-of-factly suggests that he provided the information voluntarily.

Furthermore, the record shows no evidence of intimidation or coercion. Cotten contends that he was intimidated by Detective Anderson's threat to tear his home apart and coerced by Detective Anderson's "rapid fire interrogatory techniques coupled with the fact that [he] was barely awake . . . ." The test, however, is whether Cotten's will was "overborne" by Detective Anderson's conduct. *Guardiola v. State,* 20 S.W.3d 216, 223 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). Detective Anderson testified that he did not threaten Cotten, and Cotten does not point to anything substantive in the record establishing a causal connection between Anderson's statements and his decision to confess. Indeed, the lack of intimidation and coercion is evident during the interview. As was noted above, Cotten responded that he had "[n]o problem at all" speaking to Detective Anderson and then did so without reservation.

The totality of the circumstances surrounding Cotten's interrogation also shows that his waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. At the start of the interview, Detective Anderson asked Cotten a series of identifying questions. Then Anderson read the warning card aloud to Cotten, making him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights. *Miranda,* 384 U.S. at 444, 86 S. Ct. at 1612; Tex. Code Crim. Proc. Ann. art. 38.22, § 2. Cotten signed the warning card, thereby ostensibly acknowledging those warnings and indicating that he understood them. Cotten's conduct during the interview likewise demonstrated that he had the requisite level of comprehension to waive his constitutional and statutory rights. Although Cotten can be heard yawning intermittently during the interview, it is obvious that he was alert, appeared to comprehend the warnings and the questions propounded to him, and was coherent and appropriate in his responses.

Cotten maintains that "[his] mental state was diminished [when] Detective Anderson read the warnings to him" because "[h]e was not fully awake." Cotten, however,

presented no evidence from an expert establishing that when the *Miranda* warnings were administered to him, his capacity to pay attention and make informed decisions based on the information that was being imparted to him was impaired. Cotten did testify at the suppression hearing that he "was dazed from sleep" and that when Detective Anderson began talking to him, he "wasn't clear on exactly what was going on." But Cotten also testified that when police burst through his bedroom door "screaming and yelling and . . . pointing guns at [him,]" he "wasn't asleep anymore . . . ." As the sole trier of fact and judge of credibility, the trial court was free to believe or disbelieve all or any of Cotten's testimony, even if uncontroverted. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Based on the evidence before it, the trial court was well within its purview to conclude that Cotten was awake and alert when the *Miranda* warnings were administered to him.

Cotten has failed to demonstrate that the trial court erred in denying his motion to suppress on the basis that the State did not satisfy its burden by a preponderance of the evidence to establish that he waived his constitutional and statutory rights voluntarily, knowingly, and intelligently.

> . . .

### SECOND STATEMENT

In his third and final issue, Cotten argues that the trial court erred in failing to suppress his second statement because the warnings required by *Miranda* and Article 38.22 were not read to him again before he was questioned at the police station. We disagree.

#### *Applicable Law*

In a situation in which a suspect is warned about his *Miranda* rights, a break in the questioning occurs, and questioning resumes without new *Miranda* warnings, the *Miranda* warnings administered in the first interview remain effective as to admissions made during the second interview if, in the totality of the circumstances, the second interview is essentially a continuation of the first. *Bible v. State,* 162 S.W.3d 234, 241-42 (Tex. Crim. App. 2005); *Jones v. State,* 119 S.W.3d 766, 773 n.13, 795 (Keller, P.J. concurring) (Tex. Crim. App.2003), *cert.*

*denied,* 542 U.S. 905, 124 S. Ct. 2836, 159 L.Ed.2d 270 (2004); *Ex Parte Bagley,* 509 S.W.2d 332, 337–38 (Tex. Crim. App. 1974); *Franks v. State,* 712 S.W.2d 858, 860–61 (Tex. App.-Houston [1st Dist.] 1986, pet. ref'd). In determining whether *Miranda* warnings previously administered remain effective in a subsequent interview, we consider: (1) the passage of time; (2) whether the interviews are conducted by different people; (3) whether the interviews relate to different offenses; and (4) whether the suspect is asked during the second interview if he received the warnings earlier, if he remembers the warnings, and if he wishes to invoke his rights. *Bible,* 162 S.W.3d at 242; *Jones,* 119 S.W.3d at 773 n.13.

### *Discussion*

Under the totality of the circumstances, the two sessions of questioning were essentially a single interview for the purposes of *Miranda* and Article 38.22; therefore, the *Miranda* warnings administered during Cotten's first interview were still effective during his second interview. Cotten's second session of questioning began approximately two hours after his first session of questioning began. Although each session took place at different locations, the same law enforcement officer—Detective Anderson—administered the warnings and led the questioning in both sessions, and both sessions focused on the same set of crimes—counterfeiting and forgery. Moreover, before any questioning began at the second session, Detective Anderson obtained Cotten's acknowledgment that he had previously been given warnings and Cotten's assent to continue the "conversation [they] started today."

Cotten argues that the second session "was a separate and independent interrogation" because "[t]he location changed dramatically" and "[t]he individuals present had changed dramatically." He is mistaken. Although each session took place at different locations, the second one occurred within two hours of the first one, concerned the same subject, and began with Cotten acknowledging the *Miranda* warnings he received previously. And though Cotten asserts that the individuals at the second session were dramatically different than those at the first one, two of the three law enforcement officials involved in the first session—Detective Anderson and Agent Holloway—were involved in the second one.

14

Cotten has failed to show that the trial court erred
in denying his motion to suppress on the basis that he
was not given the warnings required by *Miranda* and
Article 38.22 before being questioned at the police
station.

. . .

(Op. 1-9, ECF No. 10-7 (Footnotes omitted).)

Petitioner has failed to show that the state court's
determination was contrary to or involved an unreasonable
application of federal law or was an unreasonable determination of
the facts based on the evidence in the record. *See Schneckloth v.
Bustamonte,* 412 U.S. 218, 226 (1973) (the due-process test takes
into consideration "the totality of all the surrounding
circumstances—both the characteristics of the accused and the detail
of the interrogation"). *Miranda* requires that a person taken into
custody be given preinterrogation warnings that he has the right to
remain silent, that anything he says may be used against him, and
that he has a right to retained or appointed counsel before
submitting to interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444-
45 (1966). These safeguards are codified in article 38.22, § 3(a)
of the Texas Code of Criminal Procedure, which prohibits the
admission of an oral statement made by a defendant as a result of
custodial interrogation unless: (1) an electronic recording is made
of the statement; (2) the accused is advised of his *Miranda* rights
and voluntarily waives such rights; (3) the recording device was
capable of making an accurate recording, the operator was competent,

15

and the recording is accurate and has not been altered; and (4) all voices on the recording are identified. TEX. R. CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp. 2014). A suspect may waive his *Miranda* rights so long as the waiver is made voluntarily, knowingly, and intelligently. *Miranda,* 384 U.S. at 444.

Having independently reviewed the record, this Court is in accord with the state court's analysis and findings that Petitioner's statements were taken in compliance with *Miranda* and the Texas Rules of Criminal Procedure. The Court finds no Supreme Court precedent that the police were required to read aloud the waiver provision in the "MIRANDA WARNING" signed by Petitioner acknowledging his understanding and voluntary and knowing waiver of his rights. Nor does the Court find Supreme Court precedent that the police are required to reread a defendant his *Miranda* rights following every break in the interrogation. *See United States v. Weekley,* 130 F.3d 747, 751 (6th Cir. 1997) (one-hour interval between warnings and interrogation did not render confession involuntary); *United States ex rel. Patton v. Thieret,* 791 F.2d 543, 547-48 (7th Cir.) (warnings did not need to be reread after forty minute lapse), *cert. denied,* 479 U.S. 888 (1986); *Evans v. McCotter,* 790 F.2d 1232, 1237-38 (5th Cir.) (rights voluntarily waived where suspect was twice warned over a three-hour period notwithstanding change of interview locations), *cert. denied,* 479 U.S. 922 (1986); *Stumes v. Solem,* 752 F.2d 317, 320 (8th Cir.) (five-hour interval

16

between first and second interviews did not invalidate suspect's waiver given before the first interview), *cert. denied,* 471 U.S. 1067 (1985); *Jarrell v. Balkcom,* 735 F.2d 1242, 1254 (11th Cir. 1984) (change in interrogators and three-hour lapse did not render confession inadmissible); *United States ex rel. Henne v. Fike,* 563 F.2d 809, 814 (7th Cir. 1977) (nine hours between warnings and waiver not too long), *cert. denied,* 434 U.S. 1072 (1978); *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir. 1973) ("[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them[.]").

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED January 11, 2017.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE